This is an eviction suit under Act 200 of 1936. Plaintiff alleges that on June 2, 1945, by written contract, it leased to the defendant a certain gasoline and service station, together with certain movables, situated in the Town of Hammond, for a term of one year beginning on the first day of July, 1945, and ending on the 30th of June, 1946, for a monthly rental of an amount equivalent to one cent for each gallon of gasoline and other motor fuels sold during the month, or fraction thereof, at the premises up to 11,000 gallons per month and an amount equivalent to one-half cent for each gallon of gasoline and other fuels sold in excess of 11,000 gallons per month; that on the termination of the lease on June 30, 1946, plaintiff and defendant orally and mutually agreed to renew the said lease upon the same terms and conditions except that *Page 103 
the said renewal was to be a month to month basis; that, desiring to terminate the lease as of January 31, 1937, it gave the defendant written notice of its such intention on or about December 30, 1946, which said notice was received by defendant on or about December 31, 1946, or more than ten (10) days before the expiration of the month of January, 1947; that defendant has failed to vacate the premises in conformity with the notice, and that the monthly rental has been in excess of $100 monthly.
For answer, the defendant admitted the execution of the lease, the receiving of the notice to vacate, and that the amount of the monthly rental exceeded $100, but denied the remainder of plaintiff's petition. In further answer, defendant avers that the said lease, prior to its termination had been mutually extended on an annual basis; that relying upon the said extension, he had expended various sums in improving, renovating and making the premises more attractive, amounting to the sum of $1500, all at the request of the plaintiff; that he incurred attorneys' fees to the amount of $500 in defense of the suit, and has been damaged to the sum of $1000 for his inconvenience, personal expenses and mental anguish; that as a further consideration of the extension of the lease on an annual basis, defendant was to handle and sell plaintiff's products at certain other stations owned or leased by him or the A. M. Edwards Co., Inc. By supplemental answer, in the alternative, he avers that the lease was renewed by the operation of law, to-wit, reconduction on an annual basis. His prayer is that plaintiff's suit be dismissed and that he be granted judgment in his favor and against the plaintiff in the sum of $3000, with interest and costs.
The trial of the case resulted in a judgment dismissing plaintiff's suit, at its costs, and disallowing defendant's reconventional demand as of non-suit. Plaintiff has appealed.
The only admitted facts in this case are that the filling station and appurtenances were leased by the plaintiff to the defendant by written contract of lease for one year from noon on July 1, 1945, to noon on June 30, 1946, without any provision for the privilege of extending or automatic renewal of the said lease. That at the expiration of the said lease on June 30, 1946, the plaintiff allowed defendant to remain in the occupancy of the leased premises on the same monthly rental payment as provided for in the expired lease. That plaintiff, on December 28, 1946, notified the defendant, by letter, which letter was received by defendant on December 31, 1946, that it was desirous of terminating the lease as of January 31, 1947, and requested the defendant to vacate and surrender possession of the premises to it as of that date; and that the rental exceeded the sum of $100 per month. The remainder of the facts are highly controversial and in conflict as can readily be deduced from the pleadings.
The plaintiff, in substantiation of its position, offered the testimony of Mr. Case Wilburn, its district manager in charge of its Tangipahoa Parish business, and a prior lease, covering the station involved herein from it to defendant, executed on June 1, 1942, for a term of one year from July 1, 1942, to June 30, 1943, with a clause reading as follows: "It is agreed that this lease shall be automatically renewed from year to year, unless and until either party gives to the other fifteen (15) days' prior written notice of its intention to terminate the lease at the end of the first year or at the end of any subsequent yearly period."
The testimony, on direct examination of Mr. Wilburn, is short, and, therefore, we will quote it in full:
"Q. Will you state to the Court when and under what circumstances this discussion was had and the substance of the discussion had? A. In about, May of 1946, Mr. Edwards and I were in my automobile and we were discussion (discussing) several problems that came up. In the conversation, I asked Mr. Edwards — I told Mr. Edwards that we did not plan to release our service station to him at Hammond. At that time Mr. Edwards asked me why and I told him there were several reasons but one was the fact he refused to lease us his station in Ponchatoula — was one of the reasons. He said he couldn't understand that and I told him that is the way we felt about it. The conversation *Page 104 
went on along those lines and we came up in front of his place of business, the Motor Company, and I told him we would let it go on a month to month basis until we decided what we were going to do, and Mr. Edwards at that time looked at me and got out of the car and there wasn't any more conversation about the lease. I drove on back to Baton Rouge.
"Q. You told Mr. Edwards you wouldn't consider leasing this station to him at the termination of the written lease in June, 1946? A. Yes.
"Q. On any basis other than month to month lease? A. Yes, There wasn't any discussion about it month to month. I just mentioned it."
On cross-examination, he was emphatic that there was no verbal renewal of the lease on an annual basis, insisting that it was only on a monthly basis. He emphatically denied that it was agreed that defendant could have this station as long as defendant sold plaintiff's product at the other stations operated by the defendant. He testified that defendant, through information, had had this station for some ten or twelve years or more, and that plaintiff's products had and were being sold at the station in contest and other stations of the defendant, particularly at the Welch Station at Ponchatoula, owned by defendant, the defendant being the bulk station agent of plaintiff for Tangipahoa on a commission basis. He admitted that plaintiff has leased the station in contest to former employees of defendant.
The defendant testified that he is the Commission agent of the plaintiff and has had the station in question as lessee for some twelve years under written leases. "The way the leases went, to the best of my knowledge, they would renew themselves from year to year on some kind of extension basis." He states that on the occasion referred to by Mr. Wilburn, Mr. Wilburn requested a lease of the Welch Station which he owned and he refused to lease the station to plaintiff, and "Mr. Wilburn said we cannot lease you the company-owned station known as the Thomas and Magnolia station in Hammond (the station in question), and I said Well, we don't need any written lease to do business, if we were continuing to do business on the same basis as before, which was expressed in the written lease and which was agreeable to him." He further states that he did not have any other agreement changing or modifying that agreement with Mr. Wilburn and that he and Mr. Wilburn agreed at that time that the lease of the station in question would be renewed under the same terms and conditions as provided for in the written lease, inferring that the lease was extended on an annual basis. Later on, on cross-examination, he is firm in his testimony that the written lease was extended orally on an annual basis, and categorically denies that there were any discussions of the lease being extended or renewed on a month to month basis, and that the first of such a contention on behalf of plaintiff were when he received the letter of December 28, 1946.
The only question presented herein is whether the lease was renewed on a month to month basis, as contended by plaintiff, or on an annual basis, as contended by the defendant. Since the principal witnesses' testimony is in conflict, we must look for corroborating circumstances.
It is admitted by the defendant that it was the policy of the plaintiff to lease this station to him by written leases, and that such written leases usually had a renewal clause (quoted supra), contained in the lease of June 1, 1942, the prior lease to the lease in question. Under this clause, the lease was automatically renewed on the annual basis. We fail to find such a clause in the lease under consideration. The reason therefore cannot be indulged in or presumed. This fact seems to corroborate Mr. Wilburn's testimony that he did not care to renew the lease on an annual basis but merely allowed the lease to expire and the defendant to remain in possession of the filling station on a month to month basis. Furthermore, plaintiff leased this property to a third person.
The corroborating circumstances in favor of the defendant is the fact that prior to the expiration of the lease, plaintiff sought to obtain a lease from defendant on the Welch station at Ponchatoula, which *Page 105 
he refused. Plaintiff allowed the lease to expire without taking any action at or after its termination to obtain possession of the premises for some six months, leaving the defendant under the impression that there was a mutual renewal of the lease on an annual basis, as had been on prior occasions.
The fact that defendant was the commission agent of the plaintiff and was handling plaintiff's products at several stations owned or operated by him has no material bearing on the case. This fact could not renew the lease. In fact, this contention of defendant is inconsistent with his contention that the lease was renewed on an annual basis.
[1] Our conclusion, under the evidence, is that there was no meeting of the minds. In fact, according to Mr. Wilburn's testimony, when he, the witness, mentioned the renewal of the lease on a month to month basis, defendant turned around and went away without giving his approval and consent. Likewise, Wilburn is emphatic that he did not consent to a verbal renewal of the lease on an annual basis. Therefore the question has to be decided as one where a written lease has expired without any express extension or renewal, and one where the lessor has permitted the lessee to remain in possession of the property for six months, thus creating a tacit reconduction of the lease.
The plaintiff contends that the situation is controlled by the provisions of Article 2689, Revised Civil Code, which reads as follows: "If the tenant either of a house or of a room should continue in possession for a week after his lease has expired, without any opposition being made thereto by the lessor, the lease shall be presumed to have been continued, and he can not be compelled to deliver up the house or room without having received the legal notice or warning directed by article 2686," which said Article 2686 provides that a written notice of ten days prior to the expiration of the month which has begun to run be given by the other party desiring to put an end to the lease. In substantiation of its contention plaintiff cites the case of Le Blanc v. Barielle, La. App., 25 So.2d 638. The defendant contends that the lease has been reconducted on an annual basis, under the provisions of. Revised Civil Code Article 1817, which reads as follows: "Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation; if, after the termination of a lease, the lessee continue in possession, and the lessor be inactive and silent, a complete mutual obligation for continuing the lease, is created by the act of occupancy of the tenant on the one side, and the inaction and silence of the lessor on the other," and Revised Civil Code Article 2688, which reads as follows: "If, after the lease of a predial estate has expired, the farmer should still continue to possess the same during one month without any step having been taken, either by the lessor or by the new lessee, to cause him to deliver up the possession of the estate, the former lease shall continue subject to the same clauses and conditions which it contained; but it shall continue only for the year next following the expiration of the lease," and the following cases: Mossy v. Mead, 2 La. 157; Foucher v. Leeds, 2 La. 403; Classen v. Carroll, 18 La. Ann. 267; Mossey v. Mead, 4 La. 195; Armstrong v. Bock, 20 La. Ann. 190.
[2] Since the property in question is a lot, with buildings thereon, situated in the City of Hammond, and since plaintiff permitted the defendant to remain in possession of the said property for more than one week after the termination of the written lease, we are of the opinion that a tacit reconduction of the said lease on a month to month basis as provided for under Civil Code, Article 2689, supra, rather than on an annual basis under Civil Code, Article 2688, took place.
We are fortified in our conclusion by the recent decision rendered by the Orleans Court of Appeal in the case of Le Blanc v. Barielle, 25 So.2d 638, 640, wherein the same contention is made by the present defendant, including the same citations, were made relative to tacit reconduction of a lot under a written lease, and in disposing of the issue that court stated:
"[4, 5] Counsel for Barielle argues that in permitting him to remain in the premises, *Page 106 
LeBlanc, by his silence and inaction, created the obligation to let him remain for the extended term. He cites Civil Code, Article 1817, which reads as follows:
" 'Silence and inaction evidencing assent. — Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation; if, after the termination of a lease, the lessee continue in possession, and the lessor be in-active and silent, a complete mutual obligation for continuing the lease, is created by the act of occupancy of the tenant on the one side, and the inaction and silence of the lessor on the other.'
"But the fact that LeBlanc permitted Barielle to remain in the property cannot be construed as an assent to the extended term provided for in the option, for it seems to be well settled that where a lease which contains an option for a term renewal is allowed to expire, the fact that the lessor does not at once require the lessee to vacate does not constitute acquiescence in the extended term but merely brings about a reconduction under the appropriate articles of our Civil Code — 2689, where a house or a room is involved or 2688, in the case of a predial estate. That exact question was considered in Mossey v. Mead, 4 La. 195. There, the lessee leased his house to a tenant for one year with the agreement that if the tenant required it 'he should have the privilege of remaining seven years longer at the same rent.' During the original term no notice of intention to take advantage of the option for an extended term was given but after the expiration of the original year, the tenant or his successor was allowed to remain in the property for three years and the lessor accepted the monthly rent each month during those years. It was contended that by accepting the rent money each month for those years after the expiration of the original term, the lessor should be considered as having acquiesced in the extension of the lease for the seven year period. The court held that the acceptance of the rent merely constituted a reconduction in accordance with the articles of the Code and did not bring about the extension for seven years, which could only have been accomplished by actual notice given by the lessee of his intention to renew. In Dolese v. Barberot, 9 La. Ann. 352, the Supreme Court reached the same conclusion and there tersely said:
" '* * * There having been no agreement between the parties to renew the lease, and the privilege of renewing it either for three or six years accorded to the defendant by an express stipulation not having been exercised by him; the effect of his holding over after the expiration of the term of the original lease was to constitute a tacit re-conduction from month to month. * * *'
"See also Bowles v. Lyon, 6 Rob. 262.
"The conclusion reached in Classen Co. v. Carroll, 18 La. Ann. 267, is not inconsistent with the above-stated well-established rule, though a reading of the syllabus in this case might create the impression that the court there held that a situation similar to that involved here was controlled by Article 1817 of our Code, which provides for the obligation which, under certain circumstances, is created by silence and inaction. That syllabus reads as follows:
'Silence and inaction are, under some circumstances the means of showing an assent that creates an obligation; if after the termination of a lease, the lessee continue in possession, and the lessor be inactive and silent, a complete mutual obligation for continuing the lease is created by the act of occupancy of the tenant on the one side, and the inaction and silence of the lessor on the other.'
"But that does not accurately set forth the conclusion that was reached in that case. There tenants were permitted to remain in a building for many months after the original term of the lease had expired but they did not pay rent for fifteen months and when the landlord attempted to collect rent for that period they took the position that the original lease had not been extended. Though the decision is a little confusing, the tenants apparently maintained that the rent which they might owe for that fifteen month period was not controlled by the original agreement. The Supreme Court held that under those circumstances the terms of the original lease were extended into the period of reconduction and that the amount of rent to be paid and the obligation *Page 107 
due by the tenants during that fifteen month period were controlled by the terms of the original lease. The holding in that case is not inconsistent with the established rule that where a lessor permits a lessee to remain in occupancy of the leased building after the term of the original lease has expired, this does not constitute anything more than a reconduction under the articles of the Code.
"[6] In an interesting article in Louisiana Law Review, Vol. 1 at page 443, entitled, 'Tacit reconduction — A New Lease,' the author points out that from many decisions in this state there has been created confusion as to whether a reconduction of an urban lease constitutes a new lease or is merely an extension of the original agreement. But whether the reconduction of a lease of urban property constitutes a new agreement or is merely an extension of the original agreement on a month to month basis is not important here, for in any event under the provisions of the Code the reconduction may be terminated by either party on the giving of proper notice. This was held in Bowles v. Lyon, supra, which case the author of the article to which we have just referred, cites and which he refers to as being a case in which the Supreme Court 'clearly analyzed the whole problem and spoke of the reconducted lease as a "new lease" ' ".
[3] The proper notice required by Civil Code Article 2686, supra, was given here and therefore the defendant must be required to vacate the property, and that part of the judgment not so decreeing must be annulled, avoided and reversed. Since the defendant did not appeal or answer the appeal, we are not concerned with that part of the judgment dismissing his reconventional demand as of non-suit. Plaintiff's right of any claim for damages, if any, will be reserved.
For the reasons assigned, it is ordered that the judgment appealed from, in so far that it dismissed plaintiff's suit with costs, be and the same is hereby annulled, reversed and set aside.
It is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Standard Oil Company of New Jersey, and against the defendant, Leon Edwards, ordering and condemning the said Leon Edwards, immediately upon the finality of this decree, to vacate the property and premises described as follows:
Lots 10 and 12 in Square 55 as per original plan and survey of the Town of Hammond, Parish of Tangipahoa, State of Louisiana, and the said lots measuring 50' each on Magnolia Street and extending back bteween parallel lines 150' on Thomas Street, and forming the South 2/3 of the SE1/4 of said Square 55, together with all water rights and privileges as it now exists from the artesian well on the adjoining property, — acquired by vendor herein from Bres Motor Company as per deed in Conveyance Book 93, page 487, of the records of the Parish and State.
Together with all rights-of-way, easements, drive-ways and pavement, curb and street front privileges thereunto belonging and together with all the buildings, improvements and equipment thereon or connected therewith, including the following property:
4 — Calcometer Pumps 2 — 20 Bbl. Tanks 2 — 10 Bbl. Tanks 1 — Air Compressor 1 — Hydraulic Lift 1 — Barrel Pump 1 — T — 36c — 1 Bbl. Lub Tank, Defendant appellee to pay all costs.
It is further ordered that plaintiff's right of any claim for damages, if any, be reserved unto it.
And as thus amended, the judgment is affirmed. *Page 108